

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

Honorable Olin Culberson, Member
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-3847
Re: May the Commission
recognize a consolida-
tion of leases made
prior to June 5, 1941,
in the Pittsburg Field,
Camp County, Texas, and
grant a tolerance allow-
able to said consolidated
tract or is it precluded
from doing so because of
its order of June 5, 1941,
forbidding the combination
of leases in order to ob-
tain tolerance?

We have your letter of July 20, 1941, setting forth
certain facts and propounding a question thereunder. The
statement made and the question propounded are copied in full
from your letter as follows:

"STATEMENT

"A prospective oil field containing a certain 200
acre tract, title to which was held by one person,
was subdivided by lease into various tracts. A
secured a lease on 40.33 acres in 1939. B secured
a lease on 20 acres by assignment of the original
lease and subsequently B by assignment transferred
said lease to A on May 20, 1941.

"On June 5, 1941, the Commission passed an order in
which it inhibited consolidation of tracts for the

purpose of either drilling or securing considera-
tion on allowables by reason of increased acreage.
Prior to that time the tolerance rule of the Com-
mission prohibiting such was not in effect, but
there was a tolerance rule.

"On May 28, 1941, A secured this additional 20 acres
and asked that it be consolidated with his first tract
of 40.33 acres and that the Commission allow him con-
sideration for 60.33 acres in setting his allowable.
The two tracts mentioned were and are the only acreage
owned by both A and B in this particular field, ex-
cept for other lands owned by A which are not con-
tiguous to the tracts in question. Both tracts are
contiguous.

## "QUESTION

"Under the Commission's order of June 5, 1941, is
the Commission precluded from granting A the author-
ity to consolidate these two leases?"

In addition to the facts set out above, we deemed it neces-
sary to obtain further information in order to properly answer
the question asked us and so we obtained the Commission's file
covering the leases involved herein, from which we acquired the
following additional information:

(1) The tracts in question are located in the Pittsburg
field, Camp County, Texas.

(2) When the tracts in question were subdivided from the
original 200-acre tract there were no special field rules in
existence in said area and the statewide spacing rule in ef-
fect then provided for a 10-acre spacing pattern, therefore,
no question is presented here of a subdivision made in deroga-
tion of the Commission's spacing rule.

(3) At the time of the consolidation of the 40.33-acre
tract with the 20-acre tract, the Commission's field rules in

Honorable Olin Culberson, page 3

the Pittsburg Field insofar as they are pertinent to our inquiry here provided as follows:

"RULE 1. Said field and further extensions thereof shall be divided into tracts of forty (40) acres each, and each producing tract shall be a proration unit. A tolerance of twenty (20) acres on producing tracts of more than forty (40) acres shall be allowed when the size and shape of the tract warrants and after the tract has been drilled to its final density. For proration purposes the amount of acreage assigned each well shall be the acreage contained in each proration unit, whether fractional or not. No unit shall be in length more than twice its width, where the size and shape of the tract permits.

"RULE 13. The daily total field oil allowable as fixed by the commission shall, after deductions have been made for wells incapable of making their allowables, be distributed among the producing wells in the field on the following basis:

"(a) The daily acreage allowable for each well shall be that proportion of fifty (50%) per cent of the daily field allowable which the acreage assigned to the well bears to the total acreage assigned to all the wells in the field.

"(b) The daily per well allowable for each well shall be determined by dividing fifty (50%) per cent of the total field allowable by the number of producing wells in the field. The total daily allowable for each well shall be the sum of its acreage and per well allowables."

Said special field rules further provided that wells should not be drilled nearer than 1320 feet to any other completed or drilling well or 660 feet to any property line or lease line, this being in effect a forty acre spacing pattern.

The Commission having found in effect by the promulgation of its 40-acre spacing rule embodied in its field rules for the Pittsburg Field entered and effective September 16, 1940, that generally speaking wells drilled on a spacing pattern of one well to 40 acres will more efficiently recover the oil in the field have in effect also found by implication that wells drilled on a larger or smaller pattern will in general cause physical waste.

In many instances the Commission is confronted with the duty of determining which of two or more methods of production is least wasteful, one of which must be permitted in order to protect vested rights or for some other valid legal reason. If the least wasteful is chosen then the Commission's order in question must be upheld as a conservation measure. Railroad Commission v. Earl Fain, et al, 161 S. W. (2d) 498.

It seems to us that we have just such a situation here. The 40.33-acre tract was subdivided from the original 200-acre tract on December 17, 1939. The 20-acre tract was subdivided from the original 200-acre tract June 23, 1938. At the time said tracts were so subdivided, the Commission's applicable spacing pattern was that provided in its statewide rules being one well to 10 acres as on the dates set out above no special rules had been promulgated in the Pittsburg Field, hence, as a matter of law, said tracts were entitled to separate development and to at least one well each. Humble Oil and Refining Company v. Railroad Commission, 94 S. W. (2d) 1197; Dailey v. Railroad Commission, 133 S. W. (2d) 219.

Under the above facts it seems clear to us that the question of whether or not less waste will be caused by allowing the combined tracts of 60.33-acres formed by consolidating the 40.33-acre tract with the 20-acre tract, a tolerance of 20 acres as provided for in its field rules promulgated September 16, 1940, than would be caused by allowing a well to be drilled on each of said tracts would be one that addresses itself to the sound discretion of the Commission.

On June 5, 1941, the Commission entered an order which among other things provided that no combination of leases will be considered in determining whether or not tolerance will be granted a given well but we see no reason why the order of June 5, 1941, enacted subsequent to the consolidation of the tracts in question should deter the Commission from granting such tolerance allowance to tracts combined before such order was entered.

We pause here to distinguish the facts herein from those existing in the Gillespie case (F. A. Gillespie and Sons Company v. Railroad Commission, 161 S. W. (2d) 159). In that case the Court of Civil Appeals held that where an operator owned a number of 5-acre tracts entitled to separate development in a field where the rules provided for 10-acre spacing with a maximum of 15-acre tolerance on the last unit drilled on a particular lease, combined said 5-acre tracts into units of 15 acres each by consolidating three of the 5-acre units, when said operator could just as easily have combined the tracts into 10-acre units by consolidating two 5-acre tracts that such operator was not entitled to a tolerance allowable when other operators who had combined their 5-acre tracts into 10-acre units to conform to the Commission's applicable spacing rule claimed discrimination and drainage because of the larger allowable given the 15-acre combined tracts.

In that case the operator voluntarily created a spacing pattern contrary to the Commission's rule when it would have been just as easy to pool the tracts in conformity with the existing spacing rules.

In the present case the size of the tracts involved precludes the operator from combining them into a unit conforming to the Commission's present spacing pattern in the Pittsburg Field.

From the above, it is apparent that our answer to your question is that the Commission's order of June 5, 1941, does not prevent the Commission from granting a tolerance allowable on the combined tract in question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _[signature]_

E. R. Simmons
Assistant

CCT 19, 1942
_[signature]_
GENERAL OF TEXAS
ERS:EP